Ms. Jansen, we'll hear from you first. Good morning, Your Honors, and may it please the Court, I'm pleased to be here with you in person today representing Mr. Ohlmeier on a fairly straightforward issue having to do with the JVTA assessment. To open up today, as I was reading last night, I was rereading the Sixth Circuit case from 2019 in United States v. Shepard. And what the Court did in that case was they tried first to define indigency. They looked at Black and Oxford Law dictionaries, and they said, indigence is extreme hardship or neediness, poverty, the condition of a person who lacks the means of subsistence. And the Court said, these definitions suggest a more dire condition than simply living paycheck to paycheck. It summons the thought of one who earns no paycheck at all and instead relies on others for life's basic necessities. They cannot do two things. One, they live in poverty now at the time of sentencing, and two, they lack the means to get out of poverty, which, of course, are the two things that this Court has said we need to look at in deciding whether the JVTA assessment applies. It is difficult to imagine, other perhaps than the Barthman case, a more fitting example than Todd Ohlmeyer of someone who fits the definition of being indigent. At the time of sentencing, he had been unemployed from his truck driving job for over eight months. He had $430 in the bank, a 27-year-old GMC truck, and over $7,200 in personal debt. He had no income at all at the time of sentencing and was relying exclusively on his children for the means of his subsistence. And that's what stood out to me about the Court's words in Shepard, a person who relies on others for life's basic necessities. That's precisely what was happening at the time of the sentencing in this case. Mr. Ohlmeyer also lacks the means to ever become able to pay this assessment. He was 58 at the time of sentencing, not quite the 80 years old that Mr. Barthman was, but he'll be close to 65, at least 65, when he discharged. Didn't he request or admit that he could pay $3,000? So, I mean, are we really sitting here and arguing about the $2,000? We are, Your Honor. I think the AVAA assessment and the JVTA assessment are two completely different things. The judge has no discretion with regards to the JVTA assessment. But, I mean, he essentially admitted he could pay the $3,000. So we're looking at what age was he going to get out at? Your Honor, I don't know that I would go so far as to say that he admitted that he could pay the $3,000. What he actually said on page 28 of the trial transcript through his counsel was that Mr. Ohlmeyer is, quote, seeking to atone for his behavior in many different ways. And he realizes and recognizes that part of that is for him to try to pay some restitution into the Victim Assistance Act. So I think there's a strong distinction to be drawn between saying, look, I want to try to pay this, and a court actually finding that a person is both able now to pay it or will become able at some point in the future to pay it. There was no real dispute on the record in this case that Mr. Ohlmeyer is never going to be able to pay a $5,000 JVTA assessment. And that's an interesting point about the AVA assessment as well, is that while Mr. Ohlmeyer agreed to pay that $3,000 assessment and certainly has no basis to object to that, that assessment needs to be paid before the JVTA assessment even becomes payable. So in addition to the $7,200 negative net worth that Mr. Ohlmeyer already has, by virtue of agreeing to this $3,000 AVA assessment, he has to pay that before he even starts tackling that $5,000 assessment. Another question about the record. I thought the district court found that there was positive cash flow of $800-some a month. Is that correct? You are correct, Your Honor. The district court commented that there were two significant factors. First, it misstated Mr. Ohlmeyer's net worth as being a positive approximately $7,200 instead of a negative $7,200, which in and of itself I believe requires a remand in this case because we do not know if that was a mere misstatement. The government would certainly like us to have us think that the court just made a mistake, but there's absolutely no basis to determine that in the record. And so while I do think it's subject to a clear standard of review, even under a plain error standard of review, I think that we need to send this back for that particular reason. Counsel, did Mr. Ohlmeyer have an opportunity to correct the misstatement by the district court during sentencing? Your Honor, he did not comment on that particular statement when the judge said that. At that point, all evidence had been admitted. The record was clear at that point, and the judge was simply issuing her ruling. I do think that there's case law from this circuit that comments that at that time, once you've already objected to the fact of the – that he's objecting to the JVTA assessment, he's made his record as to the basis for these things. I'm not sure that the law requires that he needed to object again, but as I mentioned, even if it is a plain error standard of review, we have no basis to tell whether the court simply misunderstood the record or actually just made a mere misstatement. Even if that's true, though, it would be your burden on a plain error case to show a reasonable probability of a different outcome and a miscarriage of justice or however you want to describe the fourth prong of Ohlano. You're absolutely correct. Would you like to speak to those two? Because I understand your point, well, we don't know if she misstated it or if she really thought it was plus rather than minus, but given the other evidence in the record, what's the basis to say she wouldn't have imposed this amount anyway, and why is it a miscarriage of justice? Well, there are a few reasons, Your Honor. First, the judge didn't even consider the fact that this $3,000 AVAA assessment needs to be paid before the $5,000 becomes payable. In fact, the judge actually only looked at two, well, we'll call it three factors. First, that he had a net worth, which she misstated. Second, that there was a cash flow of $844, which, of course, came entirely from the generous support of his children and was not any sort of an entitlement. And the third thing that she commented on, I think, is arguably one of the most significant things in the case. She says, we have in front of us the pre-sentence investigation report, which as reflected in the report is based on the defendant's statements, but there are not other records. Well, the defendant's statements were unobjected to. All of the factual and financial information that was documented, that Mr. Ohlmeyer provided support for, he didn't provide all, every single document that the probation office wanted, but he did provide and participate in the process. And every single one of those documents showed that he had absolutely no income of his own. The $844 monthly cash flow doesn't account for food, medical expenses, medicine, hygiene, personal care, clothing, or any of those items. So even if the court had considered that $844 cash flow, the fact is Mr. Ohlmeyer went into custody that day as well. There's just simply nothing on this record to indicate that at the time of sentencing he had any income of his own that he could contribute toward this. And it's not even clear that he had any income coming from another source. I think those factors, Your Honor, in response to your question, certainly established the last two factors of the Ohlmeyer test because when the judge only gives approximately two, maybe three reasons for the finding of indigence, and the most central one, the person's net worth, is categorically incorrect, I do think that that calls into question and creates the situation where a miscarriage of justice requires remand. I would like to save the remainder of my time for rebuttal if Your Honors don't have any further questions right now. Very well. Thank you for your hearing. Thank you. Ms. Dressley, we'll hear from you. Good morning, Your Honors, and may it please the court. This Court should affirm the district court's imposition of the $5,000 special assessment under Title 18 United States Code, Section 3014, and it should do so for two reasons. First of all, the district court did not clearly err in ruling that Mr. Ohlmeyer failed to satisfy his burden in showing that he was indigent. And second, the district court did not plainly err when it misstated his net worth at sentencing. And I'd like to start with that issue first. There was nothing plainly erroneous about the district court misstating Mr. Ohlmeyer's net worth. This case exemplifies the purposes of the heightened plein air standard. The purpose, first of all, is to encourage a contemporaneous objection, and second, to discourage gamesmanship. The heightened standard here called for an objection, and instead we're left with only a cold record. And that cold record shows that the pre-sentence report said that Mr. Ohlmeyer's net worth was negative $7,283. The government said that at sentencing at transcript page 26. The defense counsel said the same thing at sentencing at transcript 27. And then the district court misstated his net worth, but that error was so minor that the defendant's counsel did not object. Counsel, for determining indigency, is it a $14,000 misstatement of the net worth that's plain on the record? Isn't that kind of important? It is, Your Honor. But as the defendant's counsel has said at pages 12 and 13 of the principal brief and page 7 of the reply brief, we cannot tell what impact that statement had, if it was a mere mistake or if the district court actually believed that Mr. Ohlmeyer So if we can't tell, shouldn't we remand for the correct number to be considered by the court? Not on plain error review, Your Honor. Plain error review requires the defendant to establish a plain error and that that error had an impact on his substantial rights, meaning that there's a reasonable probability that it prejudiced him in the district court. So it's really the second part of that issue here. I mean, it's plain error that they misstated the net worth, but what's at issue is what impact that might have had. Exactly, Your Honor. And as the defendant has said, the impact is unclear, and because of that, he cannot establish that the error there was a reasonable probability the error impacted his substantial rights. Turning to Well, could you address why there isn't a reasonable probability? I mean, isn't this a close enough case given the lack of other funds that a $14,000 swing not necessarily would have made a difference, but at least is significant enough to get over a reasonable probability hurdle? I think the primary justification for concluding that there is no reasonable probability here is Mr. The only information that the pre-sentence or the probation office was able to verify regarding his finances were the amount of liabilities he had and the value of his vehicle. At paragraph 95 of the pre-sentence report, the probation office acknowledges we have no documents verifying the amount of money in his bank account. At paragraph 96, it says we have no bills or statements needed to verify his monthly expenditures and cash flow. And finally, at paragraph 98, it says we don't have the tax documentation necessary to verify his past income, his past income that he would have earned for the last 20 years as a truck driver. Without those facts, it was impossible to determine his indigency to a verifiable basis. And of course, it is Mr. Ohlmeyer's burden to establish his indigency and prove his indigency. On top of that, you juxtapose his failure to provide financial documentation with his ability to provide all of the medical information requested by the probation office, including a letter from his physician detailing his health problems. You also juxtapose that with the statement at paragraph 71 in the pre-sentence report where Mr. Ohlmeyer has admitted previously that he is a liar and a manipulator. And I think coupling all of that together to your question, Judge Colleton, shows that there is not a reasonable probability here that the district court would have changed its mind in regard to this assessment, even if she had been corrected as to the amount of Mr. Ohlmeyer's net worth. Did the judge rely on any of the things you just cited? She did rely generally on the idea that Mr. Ohlmeyer did not provide all of the financial documentation. She did not go one by one as I did a moment ago to identify the specific documents. She also did not point to paragraph 71 of the pre-sentence report where Mr. Ohlmeyer had admitted previously to being a liar or manipulator. But of course, for plain error review, this court is free to consider those things to decide whether a reasonable probability would have existed for the district court to have changed its mind had the error been corrected at the moment it occurred. On top of that, and before I move on, I should add that the failure to provide financial documentation also supports the conclusion here that the district court did not clearly err in ruling that Mr. Ohlmeyer failed to satisfy his burden to prove his indigency. Other things showing that the district court did not clearly err, of course, Mr. Ohlmeyer has approximately 27 years to pay off this assessment and over that 27-year period, even including the rest of his financial obligations imposed by the district court, his monthly payments would be roughly $25 over that 27-year period. And he did not show that he's unable to pay that amount monthly. As was pointed out earlier, he admitted stating that Counsel, how old would he be in 27 years? How old would he be in 27 years? Roughly 85, I believe, Your Honor, give or take a few years. Pardon my math. But as he admitted at page 28 of the sentencing transcript, he specifically asked the court to consider a $3,000 special assessment under Section 2259. He admitted he would be receiving Social Security income upon his exit from prison. The probation office also agreed that some form of monetary obligation could be imposed here. At paragraphs 99 and 127 of the pre-sentence report, the probation office suggested and recommended to the court to impose an order of restitution. He will have the opportunity to work in prison. And although courts have pointed out that such income is meager, it does go towards such financial obligations like the assessment in this case. And the district court here took steps to ensure that he would be able to pay. First of all, it chose not to impose a fine, even though one was recommended at a minimum of $35,000. It rejected the government's request for a $9,000 special assessment under Section 2259. And as pointed out in the government's brief, it imposed several conditions of supervised release that would assist Mr. Ohlmeyer in being able to pay the special assessment. One last thing before I rest, unless there are other questions. The defendant, both in his brief and defense counsel this morning, pointed out that the government did not object to the financial information in the pre-sentence report. As pointed out in our brief, although the government did not object to that, no one objected as well to the fact that Mr. Ohlmeyer failed to provide the requested financial documentation. And so the idea that the unobjective facts show or somehow prove that he actually did have a negative net worth of $7,283 is simply not true. The unobjective facts are that the information the probation office had showed that amount when he had failed to provide the rest of the documentation. And unless there are other questions, I will forfeit the remainder of my time. My only question is, I wonder why the AUSA in the courtroom didn't just pipe up and say, Judge, did you mean negative $7,200 rather than positive $7,200? I know it's not the government's burden, but it would have saved a lot of time. I've wondered that myself, Your Honor. And if I would have been there, I'd like to think I would have. But unfortunately, I was not. I don't know what was going through the prosecutor's mind at that time. Okay, thank you for your argument. Okay. You may proceed with rebuttal. Thank you, Your Honor. Excuse me. Respectfully, I think counsel has given us far more reasons why Mr. Ohlmeyer is non-indigent than the district court did. Mr. Ohlmeyer has never denied that he did not provide all of the records. He did not provide some confirmatory tax documents. He didn't provide his bank account. And he didn't provide all his relevant bills and statements, which I would note that the pre-sentence writer actually refers to, though, in relationship to his cash flow, that he reported $844 of cash flow, but he didn't provide all of his relevant bills and statements. Arguably, I think that's going to show us more debt, more personal expenses, food, clothing, hygienic products, et cetera, et cetera. The notion that the court didn't misstate the net worth, it seriously troubles me. The cases that the government relies on in its briefing, Davila and more, in both of those cases, the judge said other things that would let the appellate court determine that, in fact, it was just a simple misstatement on the record. For instance, in Davila, the court made significant statements showing that it would have given the same sentence. So the concern in that case that a prior conviction had been overturned and was pending retrial didn't really make a difference. It didn't affect the outcome of the case. Similarly, in more, the court made a misstatement about the timeline that didn't actually affect the statement that the criminal history was serious. The financial net worth in this case is the only fundamental issue. Mr. Ohlmeyer had no income of his own. He had no ability to pay this debt, and he should have been found to be indigent, Your Honors. Unless you have any questions, my time has expired. Very well. Thank you to both counsel. The case is submitted. The court will file a decision in due course. Thank you, Your Honors.